UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KITA,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                            Case No. 1:08-CV-446

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff is entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act beginning on May 30, 2006.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 43 years of age at the time of the ALJ's decision. (Tr. 21). He possesses a General Equivalency Diploma (GED) and worked previously as a janitor, laborer, and receiving clerk. (Tr. 75-82, 243).

Plaintiff applied for benefits on October 1, 2003, alleging that he had been disabled since November 20, 2000, due to a neck injury. (Tr. 55-57, 68). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-54). On May 15, 2007, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff, Plaintiff's friend, Terry Pitcher, and vocational expert, Sandra Steele. (Tr. 238-95). In a written decision dated June 20, 2007, the ALJ determined that Plaintiff was disabled as of May 30, 2006. (Tr. 15-23). Plaintiff appealed this determination, but the Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2006. (Tr. 17). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must

3

establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On April 22, 1998, Plaintiff participated in an electromyography examination, the results of which revealed evidence of "mild" carpal tunnel syndrome bilaterally with "no evidence of active denervation." (Tr. 114). X-rays of Plaintiff's chest, taken on April 25, 1998, revealed "no [evidence of] acute cardiopulmonary disease." (Tr. 113).

On May 14, 1998, Plaintiff was examined by Dr. J. M. Jones. (Tr. 102-03). Plaintiff reported that he was experiencing "progressive difficulties with walking." (Tr. 102). Plaintiff ambulated with "a spastic, ataxic gait with a little asymmetry." (Tr. 102). Plaintiff was diagnosed with "progressive spastic ataxia with bladder involvement." (Tr. 102).

On May 29, 1998, Plaintiff participated in an MRI examination of his brain, the results of which were "normal." (Tr. 112). An MRI examination of Plaintiff's cervical spine, performed the same day, revealed evidence of "cervical myelopathy with some increased T2 signal changes. . .around the C5 level." (Tr. 99, 110). There was, however, no evidence of multiple sclerosis or demyelinating plaques. (Tr. 99). Also that same day, Plaintiff participated in an MRI examination of his thoracolumbar spine, the results of which revealed "minimal" degenerative changes with no evidence of signal cord abnormality or compromise of the neural structures. (Tr. 111).

On June 10, 1998, Plaintiff underwent cervical decompression surgery of C2 through C7, performed by Dr. M. G. Hughes. (Tr. 131). On August 6, 1998, Dr. Hughes reported that Plaintiff's gait "is much improved." (Tr. 143).

On August 29, 2001, Plaintiff was examined by Dr. Hughes. (Tr. 142). Plaintiff stated that "he wants approval for a job description he brought with him."[1] (Tr. 142). Dr. Hughes observed that he had not examined Plaintiff since September 1998. (Tr. 142). Plaintiff exhibited "good range of motion in his neck" and Hoffman's sign[2] was negative. (Tr. 142). Plaintiff "ambulate[d] independently" and there was no evidence of sensory or motor deficit. (Tr. 142). Dr. Hughes concluded that "for the job description [Plaintiff] brought with him I would see no contraindications to going ahead with that." (Tr. 142).

In a September 22, 2004 questionnaire, Plaintiff reported that he stopped working on November 20, 2000, because he failed a drug test. (Tr. 69).

On October 5, 2004, Plaintiff completed a questionnaire concerning his activities. (Tr. 83-90). Plaintiff reported that he prepares his own meals, washes laundry, shops, rides his bicycle, and plays cards. (Tr. 84-87). Plaintiff reported that he can walk one-half mile. (Tr. 89). Plaintiff reported that he does not experience difficulty "paying attention" and is able to "finish what [he] start[s]." (Tr. 89). Plaintiff also reported that is able to follow spoken and written instructions. (Tr. 89).

---

[1] The record does not indicate the type of job for which Plaintiff was seeking Dr. Hughes' approval.

[2] Hoffman's sign is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis. *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on March 23, 2009).

On October 25, 2004, Plaintiff was examined by Dr. Nathaniel Bishop. (Tr. 165-67). Plaintiff reported that he was experiencing "chronic neck pain" as well as "a problem with his gait." (Tr. 165). Plaintiff reported that he can stand for 20 minutes, walk for 20-30 minutes, and sit for "extended periods of time without limitations." (Tr. 165). Plaintiff also reported that he can lift one gallon of milk "without difficulty," but that lifting "more weight is more challenging." (Tr. 165).

Plaintiff ambulated with "a right-sided, moderate limp," but the doctor observed that Plaintiff did not need to use a cane as his "balance is intact." (Tr. 166). The results of a physical examination were unremarkable and Plaintiff exhibited normal range of motion throughout his cervical and dorsolumbar spine. (Tr. 166-67). Plaintiff exhibited no evidence of disorientation or motor or sensory abnormality and his reflexes were "present and symmetrical." (Tr. 167).

On May 30, 2006, Plaintiff was examined by John Jerome, Ph.D. (Tr. 180-82). Plaintiff reported that he was experiencing sensory loss, bladder dysfunction, quadriparalysis, as well as "constant pain" throughout his arms, legs, and neck. (Tr. 180). Plaintiff reported that his pain "interferes with his ability to do routine household activities, social and recreational activities and [his] ability to work." (Tr. 180-81). Plaintiff also reported that he is "quite depressed, bitter, desperate and withdrawn." (Tr. 181). The doctor described Plaintiff's speech as "halted with incomplete ideas, errors, inconsistencies, and understatements." (Tr. 181). Plaintiff's thought process was described as "tangential with very loose associations." (Tr. 181). Dr. Jerome observed that Plaintiff's attention, concentration and memory were "mildly impaired," but that he exhibited no evidence of hallucinations, delusions, or suicidal, homicidal or obsessional thinking. (Tr. 181).

Dr. Jerome concluded that Plaintiff "might be able to remember one or two step instructions, but no complicated details." (Tr. 181). The doctor further observed that Plaintiff

"would not be able to perform activities on any schedule or maintain regular punctuality or attendance in any customary employer tolerances" because "of his pain and depressive symptomatology." (Tr. 181). The doctor concluded that Plaintiff "would probably do work like activity for 20-30 minutes and then need to rest for an equal amount of time." (Tr. 181). With respect to Plaintiff's social interaction skills, Dr. Jerome concluded that Plaintiff "could get along with co-workers and adhere to basic standards of appropriate behaviors of cleanliness and neatness," but "could not respond appropriately or effectively to changes in the work setting and is not able to set realistic goals." (Tr. 182).

On September 14, 2006, Dr. Jerome completed a report regarding Plaintiff's condition. (Tr. 178-79). The doctor reported that Plaintiff suffered from depression and chronic pain syndrome. (Tr. 178). The doctor reported Plaintiff's GAF score as 50 and noted that Plaintiff's "cognition, attention, concentration and memory are all impaired." (Tr. 178). Dr. Jerome concluded that Plaintiff "is markedly impaired and unable to perform even routine activities on any regular schedule or attendance and [is] unable to work or do any work like activity for any meaningful amount of time or perform at a consistent pace without interruptions, resting or stopping." (Tr. 178).

That same day, Dr. Jerome completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 184-97). Determining that Plaintiff suffered from a disturbance of mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 185-93). With respect to the Part B criteria for this particular Listing, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, marked difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of

7

decompensation. (Tr. 194). The doctor reported that his opinion covered the period from May 30, 2006, through September 14, 2006. (Tr. 184).

Dr. Jerome also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 19 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 198-201). Plaintiff's abilities were characterized as "markedly limited" in twelve categories, "moderately limited" in three categories, and "not significantly limited" in four categories. (Tr. 198-99). (Tr. 199). Dr. Jerome characterized Plaintiff's prognosis as "poor." (Tr. 201).

At the administrative hearing, Plaintiff's friend, Terry Pitcher, testified that he has exercised power of attorney over Plaintiff's affairs since "mid" 2006. (Tr. 282-83).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) cervical spine injury and (2) depression. (Tr. 17). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ found that prior to May 30, 2006, Plaintiff retained the ability to perform work which existed in significant numbers, but that he was disabled as of May 30, 2006. (Tr. 18-23). Thus, the question in this matter is not whether Plaintiff is disabled, but instead whether he was disabled prior to May 30, 2006.

#### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that prior to May 30, 2006, Plaintiff was able to perform work activities, subject to the following limitations: (1) he could lift or carry a maximum of 10 pounds, (2) he could frequently lift or carry less than 10 pounds, (3) in an 8-hour workday, Plaintiff could stand or walk for two hours and sit for at least six hours, (4) he could only work in a clean air environment, (5) he could not work around moving machinery or at unprotected heights, and (6) he could only perform jobs involving 1-2 step instructions. (Tr. 19). After reviewing the relevant medical evidence, the Court finds that the ALJ's determination as to Plaintiff's RFC prior to May 30, 2006, is supported by substantial evidence.

The ALJ further determined that as of May 30, 2006, Plaintiff experienced the following limitations: (1) he can frequently lift or carry less than 10 pounds, (2) in an 8-hour workday, Plaintiff can stand or walk for less than two hours and sit for less than six hours, (3) he can only work in a clean air environment, (4) he cannot work around moving machinery or at unprotected heights, and (5) he can only perform jobs involving 1-2 step instructions. (Tr. 20-21). The ALJ concluded that Plaintiff "is unable to perform full-time employment on a sustained basis due to his physical condition, mental condition and pain." (Tr. 21).

With respect to the period prior to May 30, 2006, the ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sandra Steele.

With respect to Plaintiff's RFC prior to May 30, 2006, the vocational expert testified that there existed approximately 18,000 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 290-91). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

   a. The ALJ Properly Evaluated Plaintiff's Credibility

In assessing Plaintiff's RFC for the period prior to May 30, 2006, the ALJ concluded that Plaintiff's subjective allegations of pain and limitation were "not entirely credible." (Tr. 19-20). Plaintiff asserts that the ALJ failed to give proper weight to his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

With respect to the period prior to May 30, 2006, the ALJ correctly discounted Plaintiff's subjective allegations because they were inconsistent with Plaintiff's performance during physical examinations, the results of objective medical testing, and Plaintiff's reported activities. (Tr. 20). The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

With respect to the ALJ's determination concerning the period prior to May 30, 2006, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational

expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 21,800 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

c.   The ALJ was not Required to Order a Consultive Examination

At the administrative hearing, Plaintiff stated to the ALJ that "if you're not inclined to grant benefits, we'd ask that you seriously consider a neuropsychological evaluation." (Tr. 292). Plaintiff claims that the ALJ erred by failing to grant his request for a neuropsychological examination. The Court disagrees.

First, as the quoted language above makes clear, Plaintiff did not request that the ALJ purchase such an examination. Instead, Plaintiff requested that *in the event that the ALJ did not grant benefits* that he "*seriously consider*" obtaining a neuropsychological examination. The ALJ granted Plaintiff benefits and there is no evidence that the ALJ failed to consider Plaintiff's request.

Plaintiff also asserts that his request was supported by statements by Dr. Jerome and Dr. Waldo Frankenstein that Plaintiff may suffer from a closed head injury necessitating a neuropsychological examination. On September 14, 2006, Dr. Jerome theorized that Plaintiff may have suffered a closed head injury. (Tr. 178). On May 21, 2007, Dr. Frankenstein recommended that Plaintiff "be evaluated by a neurologist." (Tr. 209). These dates, however, are well after the

14

date on which the ALJ determined that Plaintiff was disabled. Discretion whether to purchase a consultive examination rests with the Commissioner. *See* 20 C.F.R. § 404.1519a. Because the medical evidence which might have supported the purchase of a neuropsychological examination is dated well after the onset date of Plaintiff's disability, Plaintiff cannot establish that the ALJ improperly failed to procure for him a neuropsychological examination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 30, 2009

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge