UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|                                          |     |                             |
|------------------------------------------|-----|-----------------------------|
| JOHN KITA,                               |     | Case No. 1:08-cv-446        |
|     Plaintiff,                           |     | HONORABLE PAUL L. MALONEY   |
|     v.                                   |     | Magistrate Judge Carmody    |
| COMMISSIONER OF SOCIAL SECURITY,         |     |                             |
|     Defendant,                           |     |                             |

## ORDER

**Adopting the R&R over the Plaintiff's Conclusory Objections;
Affirming the Commissioner's Denial of Social Security Disability Benefits;
Terminating and Closing the Case**

Defendant, the Commissioner of Social Security ("Commissioner"), denied plaintiff John

Kita's application for Disability Insurance Benefits.  Pursuant to 28 U.S.C. § 636 and W.D. MICH.

LCIVR 72.2(b), Kita's action for judicial review of that denial was automatically referred to United

States Magistrate Judge Ellen S. Carmody, who issued a Report and Recommendation ("R&R") on

March 30, 2009 recommending affirmance of the Commissioner.  Kita objected on April 9, which

was within the ten business days allowed by the statute and the rules, *see Heggie v. MDOC*, 2009

WL 36612, *1 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (citing 28 U.S.C. § 636(b)(1), FED. R. CIV.

P. 72(a), W.D. MICH. LCIVR 72.3(b), and *Deruso v. Detroit*, 121 F. App'x 64, 66 n.2 (6th Cir. 2005)).

The court ordered the Commissioner to file a response to the objections by May 15, and the

Commissioner did so.  **For the reasons which follow, the court finds that all of plaintiff's**

**objections are either conclusory or foreclosed by waiver.  Accordingly, the court will overrule the objections, adopt the R&R, and affirm the Commissioner's denial of benefits.**

As the United States Supreme Court held in *Peretz v. US*, 501 U.S. 923 (1991),

> The statutory provision we upheld in *Raddatz* [447 U.S. 667 (1980)] provided for *de novo* review only when a party objected to the magistrate's findings or recommendations.  *See* 28 U.S.C. § 636(b)(1).  To the extent *de novo* review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.

*Id.* at 939 (citation and internal quotation marks omitted).  *See, e.g., Johnson v. SSA*, 2007 WL 2292440, *1 (N.D. Ohio 2007) ("The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report to which an objection has been made.").

Furthermore, the failure to file timely *specific* objections obviates not only *de novo* district-judge review of the R&R, but *all* district-judge review.  *Nottingham v. SSA*, 2009 WL 230131, *2 (W.D. Mich. Jan. 29, 2009) (Maloney, C.J.).  Again in the words of the Supreme Court,

> In 1976, Congress amended § 101 of the Federal Magistrates Act, 28 U.S.C. § 636, to provide that a United States district judge may refer dispositive pretrial motions, and petitions for writs of habeas corpus, to a magistrate, who shall conduct appropriate proceedings and recommend dispositions.  The amendments also provide that any party that disagrees with the magistrate's recommendations "may serve and file written objections" to the magistrate's report, and thus obtain *de novo* review by the district judge.
>
> * * *
>
> Petitioner first argues that a failure to object waives only *de novo* review, and that the district judge must still review the magistrate's report [regarding the case-dispositive matters listed in § 636(b)(1)(A)] under some lesser standard.  However, § 636(b)(1)(c) simply does not provide for such review.  This omission does not seem to be inadvertent, because Congress provided for a "clearly erroneous or contrary to law" standard of review of a magistrate's disposition of certain pretrial matters in § 636(b)(1)(A) [essentially, non-dispositive motions].  Nor does petitioner point to anything in the legislative history of the 1976 amendments mandating review under some lesser standard.  *We are therefore not persuaded that the statute requires some lesser review by the district court when no objections are filed.*

*Thomas v. Arn*, 470 U.S. 140, 141-42, 149-50 (1985) (emphasis added, legislation citation omitted).

Accordingly, district judges in our circuit routinely adopt any portion of an R&R, without additional written analysis, to which the parties have not timely and specifically objected.[1] *See, e.g., Heggie v. Kuzma*, 2009 WL 594908, *2 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) ("*Where neither party has objected to a portion of the R&R, the court will adopt that portion of the R&R without review.* * * * Heggie does not object to the premise that his complaint fails to state a claim against CMS because . . . . The complaint will accordingly be dismissed as to CMS.") (internal citations omitted, emphasis added). In keeping with this practice, **the court will adopt without opinion those portions of the R&R to which Kita has not objected:** namely, the determination that the ALJ properly relied on the vocational expert's testimony, R&R at 13-14, and the determination that the ALJ did not err in refusing Kita's request to order a consultative neurological / neuro-psychological examination at taxpayer expense, R&R at 14-15.

**As to the portion of the R&R to which Kita purports to object, his objections fail for two reasons. First, at least some of the evidence Kita now raises regarding the severity of his physical impairments and limitations was not the subject of legal argument or discussion in Kita's brief before the Magistrate Judge and so cannot be considered by this court on review**

---

[1]As the Supreme Court has explained,

> "It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo *or any other standard*, when neither party objects to those findings." * * * Because neither party filed timely objections to [the R&R] . . . this Court need not conduct a review.

*Russell v. Caruso*, 2007 WL 3232126, *2 n.3 (W.D. Mich. 2007) (Maloney, J.) (quoting *Thomas*, 474 U.S. at 150). *See also Veltkamp v. SSA*, 528 F. Supp.2d 716, 718 n.2 (W.D. Mich. 2007) (Maloney, J.); *Hart v. Ridge Tool Co.*, 2007 WL 1983688, *2 (N.D. Ohio 2007) (Nugent, J.); *Montalvo v. GMC*, 2006 WL 1888704, *1 (N.D. Ohio 2006) (Zouhary, J.) ("Neither party objected . . . . * * * Thus, the Court declines to review the Magistrate's report.")

**of the R&R.**  *See* Commissioner's Response to Objections at 1-2. By failing to raise an argument, issue, or evidence before the Magistrate Judge, Kita waived his right to District Judge review thereof.  The time to marshal all evidence and argument challenging the ALJ's decision was before the Magistrate Judge.  As our Circuit has long held, "[T]he Magistrate Judge Act, 28 U.S.C. § 631 *et seq. . . .* does not allow parties to raise at the district court stage new arguments or issues."  *Murr v. US*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also US v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) ("issues raised for the first time in objections in magistrate judge's report and recommendation are deemed waived"); *accord Greenhow v. HHS*, 863 F.2d 633, 638-39 (9th Cir. 1988) (the Magistrate's Act was not intended "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court").[2]

Moreover, "[i]f the Court were to consider these untimely arguments, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Recommended Ruling has issued to advance additional arguments."  *Burden v. Astrue*, 588 F. Supp.2d 269, 279 (D. Conn. 2008) ("Regarding Burden's new argument that her headaches are debilitating because they would lead to an unacceptable number of absences for any employment for which she is qualified, this argument is waived because Burden never raised it prior to her Objection to the Recommended Ruling.").  *See, e.g., King v. Zamiara*, 2009 WL 1067317, *1 (W.D. Mich. Apr. 21, 2009) (Robert Holmes Bell, J.) ("Because Defendants failed to raise this argument before the Magistrate Judge, they will be deemed to have waived it."); *Sheets v. Astrue*, 2008 WL 3895515, *1 (S.D. Ohio Aug. 22, 2008) (Marbley, J.) ("Sheets also argues that the [ALJ] failed to say what listings were applicable or why Sheets did not meet any listing either individually or in

[2]*Rev'd o.g. sub nom. US v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (*en banc*).

4

combination. [But] this argument was not raised . . . before the Magistrate Judge and therefore is waived.").[3]

**Second, as to all issues, Kita does nothing to undermine this court's view that the R&R's outcome and rationale are sound.** For the reasons explained by the R&R, substantial evidence in the record supported the ALJ's determination that while Kita's severe impairments – depression and cervical spine injury – rendered him disabled as of his DLI (May 30, 2006), they did not render him disabled before that. A brief overview of the medical record is in order.

In April 1998, Kita underwent an electromyography (EMG) examination,[4] which revealed evidence of mild carpal tunnel syndrome on both sides with no evidence of active denervation, and an X-ray a few days later revealed no evidence of acute cardiopulmonary disease. R&R at 4 (citing AR at 113-14). In May 1998 Dr. Jones examined Kita and diagnosed progressive spastic ataxia with bladder involvement, and Kita underwent three MRIs.[5] A brain MRI was normal, but an MRI of the

---

3

*Mitchell v. Washtenaw Cty.*, 2009 WL 909581, *4 (E.D. Mich. Mar. 31, 2009) (David M. Lawson, J.) ("Because the Defendants did not raise the collateral estoppel argument in their motion before the magistrate judge, they have waived it."); *Hennessy v. CIR*, 2007 WL 4357755, *2 (E.D. Mich. Dec. 5, 2007) (Steeh, J.) ("Petitioners object to the [R&R,] stating that the IRS failed to comply with the notice requirements of 26 C.F.R. § 1.6001-1(d) and that . . . . These objections have been waived as these issues were not raised before the Magistrate Judge.");

4

An EMG is "'evaluates neuromuscular function by monitoring the effect that the nerve impulse has on its associated muscle,' and 'entails placing needle electrodes in the muscles to detect the nerve impulses transmitted to them when the patient voluntarily uses the muscles or is at rest.'" *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1187 n.2 (11th Cir. 2007) (quoting 2 ATTORNEYS MED. ADVISOR § 20:21 (2007)), *vac'd in part o.g. on reh'g*, 546 F.3d 1353 (11th Cir. 2008; *see also Creech v. Unum Life Ins. Co. of No. Am.*, 162 F. App'x 445, 451 n.9 (6th Cir. 2006) (p.c.) (Siler, Griffin, D.J. Katz) (describing EMG as "a graphic representation of the electrical currents associated with muscular action") (citing STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000) at 576).

5

MRI stands for magnetic resonance imaging, which is

cervical spine revealed evidence of "cervical myelopathy[6] with some increased T2 signal changes

. . . around the C5 level" but no   R&R at 4 (citing AR at 99, 102-03, 110 and 112).  An MRI of the

thoraco-lumbar spine revealed minimal degenerative changes with no signal-cord abnormality or

compromise of neutral structures.  R&R at 4 (citing AR 111).

In June 1998 Dr. Hughes performed cervical-decompression surgery from C2-C7, leading

to his August 1998 finding that Kita had a "much improved" gait.  But Kita "stopped working" again

in November 2000 after he failed a drug test.  R&R at 5 (citing AR 69 & 131 & 143).

Hughes did not examine Kita between August 1998 and August 2001, when he observed

good ROM in the neck, a negative Hoffman's Sign,[7] independent ambulation, and no evidence of

---

a nonionizing (non-x-ray) technique using magnetic fields and radio frequency waves to visualize anatomic structures.  It is useful in detecting joint, tendon, and vertebral disorders.  The patient is positioned within a magnetic field as radio wave signals are conducted through the selected body part.  Energy is absorbed by tissues and then released.

*Pethers v. SSA*, 580 F. Supp.2d 572, 575 n.3 (W.D. Mich. 2008) (Maloney, J.) (quoting STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) at B13).  A computer processes the energy released and formulates an image.  *Id.*

[6]

"Cervical myelopathy refers to functional disturbances and/or pathological changes in the neck." *Myers v. Chater*, 1997 WL 116805, *3 (N.D. Ill. Mar. 12, 1997) (citing DORLAND'S ILLUS. MEDICAL DICTIONARY 303 and 1090 (28th ed. 2004)).

[7]

Hoffman's sign is a neurological sign in the hand which is an indicator of problems in the spinal cord.  It is associated with a loss of grip.  The test for Hoffman's sign involves tapping the nail on the third or fo[u]rth finger.  A positive Hoffman's is the involuntary flexing of the end of the thumb and index finger – normally, there should be no reflex response.  Hoffman's sign is an indicator of neurological conditions[,] including cervical spondylitis, other forms of spinal cord compression, and multiple sclerosis.

*Krupa v. Barnhart*, 2006 WL 1517374, *4 n.7 (E.D. Pa. May 31, 2006) (citing, *inter alia*, DORLAND'S ILLUS. MEDICAL DICTIONARY 1699 (30th ed. 2003)).

sensory or motor deficit, leading Hughes to state that he saw "no contraindications" to Kita taking

the (unspecified) job whose description he had shown to Hughes.  R&R at 5 (citing AR at 142).

More-recent record evidence included Kita's October 2004 questionnaire of daily activities,

where he reported that he could walk half a mile and had no difficulty paying attention, following

instructions, or finishing what he started, R&R at 5 (citing AR 83-90); an examination that same

month where Kita told Dr. Bishop he could stand 20 minutes, walk for 20-30 minutes, and sit for

extended periods without limitation, but had chronic neck pain, a problem with his gait, and

difficulty lifting anything heavier than a gallon of milk, and Dr. Bishop found a moderate right-side

limp but normal cervical and dorsolumbar ROM, normal reflexes, and intact balance, R&R at 6

(citing AR 165-67).

In May 2006, John Jerome, Ph.D., examined Kita and found "mildly impaired" attention,

concentration and memory, but no evidence of hallucination, delusion, obsession, or homicidal or

suicidal thinking.  R&R at 6 (citing AR 181).  Psychologist Jerome opined that Kita might be able

to remember one- or two-step instructions, "but no complicated details", and his pain and depression

would prevent him from keeping a work schedule or being punctual, and he would probably need

to rest 20-30 minutes after working an equal period of time.  R&R at 6 (citing AR 181-82).  In

September 2006 Jerome diagnosed depression and chronic pain syndrome, as well as impaired

cognition, attention, concentration and memory, noted a GAF score of only 50, and opined that Kita

could not perform even routine activities on any regular schedule without interruptions and rest.

R&R at 7 (citing AR 178-79).  Also in September 2006, psychologist Jerome completed a

Psychiatric Review Technique form which diagnosed Kita with a disturbance of mood which

satisfied the Listing of Impairments § 12.04, Affective Disorders.  Jerome opined that Kita suffered

moderate restrictions on daily living activities, marked difficulty in social functioning, extreme difficult in maintaining concentration persistence or pace, and one or two episodes of decompensation from May 30-September 14, 2006. R&R at 7-8 (citing AR 184-97). Finally, Jerome completed a Mental RFC Assessment which described Kita's abilities as "markedly limited" in twelve categories, "moderately limited" in three, and not significantly limited in four, and he gave Kita a "poor" prognosis, R&R at 8 (citing AR 198-201).

**Kita's objection merely reviews evidence, without providing reasoning – such as comparison to the facts of Sixth Circuit or other decisions – to show precisely how the Magistrate Judge erred in concluding that substantial evidence supported the denial of benefits**. "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

For instance, Kita begins his objections by stating, without elaboration:

The Magistrate Judge agreed with the ALJ that there were inconsistencies with Plaintiff[']s performance during physical examinations, the results of objective medical testing, and Plaintiff's reported activities. However, claimant asserts these facts were addressed in the brief. There was not substantial evidence to deny benefits.

P's Objection at 1-2. It is of no avail for Kita to complain that these matters were addressed in his earlier briefs before the Magistrate Judge. "When a party merely purports to incorporates by reference arguments, evidence or legal authorities presented in prior filings, he has lodged an unavailing general objection." *McMurtry v. Berghuis*, 2009 WL 929012, *1 n.2 (W.D. Mich. Apr.

3, 2009) (Maloney, C.J.) (citing *Smith v. Konteh*, 2009 WL 799095 (W.D. Mich. Mar. 23, 2009)

(habeas corpus petitioner failed to satisfy the requirement of a specific and supported objection by

stating, "Petitioner respectfully objects to all the magistrate['s] proposed findings on the grounds

previously stated in petitioner's original . . . and . . .  amended habeas corpus petition . . . .") (citing

*Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) ("An objecting party may not

simply 'incorporate by reference' earlier pleadings; similarly[,] merely reproducing an earlier

unsuccessful motion . . . is not a sufficient objection to the magistrate judge's analysis, and will

ordinarily be treated by the court as an unavailing general objection.") (citing *Howard v. HHS*, 932

F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008)).  "It is

not the court's job to scour earlier filings for reasoning or citations that [plaintiff] failed to include

in [his] objections, and the court will not do so."  *Andreas v. SSA*, 2009 WL 427377, *2 (W.D. Mich.

Feb. 18, 2009) (Maloney, C.J.) (citations omitted).[8]


**Kita goes on to re-state two important undisputed factual determinations that were**

**correctly reflected in both the ALJ's decision and the R&R:**

1.      Claimant has not engaged in any gainful activities since November 20, 2000,
        the alleged onset date.  (T17)

---

[8]

*See also Foster v. Ameriquest Mortg.*, 2009 WL 646420, *2 (E.D. Mich. Mar. 11, 2009)
(adopting R&R without review, noting, "Plaintiff does not list specific objections . . . .  Plaintiff
merely attempts to reassert his claims for relief.  * * *  'Overly general objections do not satisfy the
objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006));

*US v. Hinman*, 2005 WL 958395, *2 (N.D. Iowa Apr. 22, 2005) ("The parties are cautioned
that they must file new objections to this [R&R].  They may not incorporate their previous
objections by reference."), *R&R adopted sub nom. US v. Dose*, 2005 WL 1806414 (N.D. Iowa July
28, 2005).

> 2.      Claimant has the following severe impairments: cervical spine injury and
>        depression.  (T17)

P's Objection at 2; *see also id.* at 3 ¶ 11 ("Finally the claimant who was gainfully employed most

of his life last worked in November 2000."). **Kita proceeds to recount** the May 1998 pre-surgery

MRI of the cervical spine, which showed "cervical myleopathy"; the June 1998 post-surgery MRI

of the cervical spine, which showed "degenerative disc disease, spinal stenosis and disc herniation";

the August 1998 diagnoses of degenerative disc disease and moderate spinal stenosis at C5-6 and

C6-7, and narrowing of right C6-7 and bilateral C5-6 neural foramina and bilateral C3-4 neural

foramina, with "associated nerve root involvement";and Dr. Hughes' August 2001 diagnosis of mild

spasticity.  P's Objection at 2 ¶¶ 3-4 (citing AR 17) and *id.* at 2-3 ¶ 7 (citing AR124).  Finally, Kita

points to Dr. Bishop's October 2004 exam and notes, which state that Kita had chronic neck pain,

used a cane, had difficulty walking and lifting, can sit for an extended period but cannot stand for

more than 20 minutes or walk for more than 20-30 minutes, could button his clothing or pick up a

coin but could not open a jar, had a problem with his gait, and complained of his "right lower

extremity."  P's Objection at 3 ¶ 8 (citing AR 165-167).

   Kita does not claim that the ALJ was unaware of, or ignored, any of the foregoing evidence.

Nor does he mention any of the arguably less-favorable medical evidence and opinion and attempt

to show why the ALJ should have accorded more weight to some medical evidence or opinions than

others.  More broadly, Kita does not attempt to show that this evidence *compelled* the ALJ to find

him disabled before his DLI.  At best, Kita's marshalling of medical evidence and opinion such as

those quoted above *might* show that substantial evidence existed to support a finding of disability

during the insured period; it does *not* show that substantial evidence did not support the finding of

no disability during that period.  *See Bieschke v. SSA*, 2009 WL 735077, *9 (W.D. Mich. Mar. 12,

2009) (Maloney, C.J.) ("As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.") (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  "[A] decision supported by substantial evidence", like this one, "will not be reversed simply because the evidence would have supported a contrary decision." *Bieschke*, 2009 WL 735077 at *9 (citing *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) and *Mullen*, 800 F.2d at 545).

> **Next, Kita attempts to rely on the following comments by a Social Security employee:**
>
> September 20, 2004 Social Security Field office note states "it was very difficult to get information from this individual.  He only mentioned a neck injury but his memory seems impaired.  I tried to get more information but was unable."  (T66)
>
> The Social Security worker went on to note "I tried extremely hard to get information from this individual but was unsuccessful.  He couldn't recall any information about his condition.  There may be some type pf [sic] closed head injury or some type of mental impairment."  (T67)

P's Objections at 2 ¶¶ 5-6.  But Kita does not allege that the Social Security employee in question has any medical training or licensure whatsoever.  Nor does Kita cite any authority suggesting that the ALJ was obligated to accord *any* weight to these comments by a layperson under the circumstances.  *Cf., e.g., Bower v. Barnhart*, 2003 WL 24054464, *6 (W.D. Va. Aug. 13, 2003) ("Bower's reliance on the opinions of . . . Taylor is misplaced. * * * [The] regulations accord the opinion of Taylor, a licensed social worker, only the weight due to a layman since she is not an acceptable medical source.") (citing *Lee v. Sullivan*, 945 F.2d 687, 691 (6th Cir. 1991) and 20 C.F.R. § 404.1513(a) and 20 C.F.R. § 416.913(a)); *Watkins v. Astrue*, 2009 WL 959393, *4 (W.D. Wash. Apr. 6, 2009) (affirming Commissioner's denial of disability benefits and noting, "the ALJ further noted that . . . since Detective Liburdi has no specialized training in psychology or psychiatry, I give his observations that the claimant did not appear to be paranoid, depressed, or experienc[ing] any

hallucinations, the limited weight accorded to a non-medical lay witness.").

*A fortiori*, Kita has not shown that the ALJ was somehow obligated to accord more weight to the layperson's comments than to the balance of the *medical* evidence and *medical* opinion in the record. On the contrary, "lay opinion must be given 'perceptible weight' [only] where it is supported by medical evidence." *Allison v. SSA*, No. 96-3261, 108 F.3d 1376, 1997 WL 103369, *3 (6th Cir. Mar. 6, 1997) (Kennedy, Nelson, 8th Cir. J. Godbold) (citing *Lashley v. HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) ("Perceptible weight must be given to lay testimony where . . . it is fully supported by the reports of the treating physicians.")). Moreover, to the extent that the Social Security employee's statement depended on Kita's own claims about what he could and could not remember, Kita has not shown why the ALJ was obligated to credit the employee's statement in light of the broader determination that Kita was not wholly credible. *Cf. Truitt v. Barnhart*, 127 F. App'x 273, 275-76 (9th Cir. 2005) (negative credibility finding as to lay witness's testimony was proper to the extent that the testimony rested on the claimant's own reports of pain, which the ALJ had found to be not credible).

Finally, if Kita means to complain that the ALJ's opinion did not mention the Social Security employee's statement or specify how much weight, if any, he accorded that statement, this objection fails. "[E]ven though an ALJ must consider the lay testimony, he is not required to spell out in his decision what weight he gave to the testimony." *Patrick v. Astrue*, 2008 WL 3914921, *2 (W.D. Ky. Aug. 18, 2008) (Jennifer Coffman, C.J.) (citing *Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988)). *See, e.g., Patrick*, 2009 WL 3914921 at *2 ("The ALJ's decision did not specifically indicate what weight was given to the lay witness's statements. * * * In his decision, the ALJ discussed all the medical records he considered and paid particular attention to Plaintiff's

consultative exam.  The ALJ considered the entire record and was not required to specifically address the third-party function report of Plaintiff's wife.") (record citations omitted); *Arnett v. Astrue*, 2007 WL 4259553, *3-4 (E.D. Ky. Dec. 3, 2007) (David L. Bunning, J.) (ALJ did not err in failing to expressly discuss lay witness's opinion and the weight that he did or did not accord to it); *Dunlap v. Barnhart*, 2004 WL 784837, *10 (W.D. Tenn. Mar. 15, 2004) (Vescovo, M.J.) (same).

**Next,** Kita states, "The claimant was a caregiver for his wife who died in April of 2003 after battling cancer.  He testified that he got help from others to care for her."  P's Objections at 3 ¶ 9. Kita makes no attempt to explain how he believes this is relevant.  Perhaps he intended to argue that his caring for his wife did not demonstrate physical or mental capacities consistent with steady gainful employment, because he was only able to care for her with substantial help from others.  But Kita does not say, and it is not the court's job to speculate or construct arguments for the parties.

**Next**, Kita states, "The ALJ noted that the claimant had minimal medical treatment for the period of January 2003 to May 30, 2006.  This was because he had no money."  P's Objections at 3 (first unnumbered paragraph following ¶ 11).  Standing alone, Kita's lawyer's assertion has no value.  "Assertions by counsel do not constitute probative evidence."  *In re Cohara*, 324 B.R. 24, 28 (6th Cir. BAP 2005) (citations to out-of-circuit decisions omitted); *see also DeJager Const., Inc. v. Schleininger*, 1996 WL 73168, *8 (W.D. Mich. Mar. 13, 1996) (Quist, J.) ("Statements of counsel, while binding as stipulations or concessions if made in open court or in writing, are not 'evidence' . . . . They are mere argument."). *See, e.g., Tapco Prods. Co. v. Van Mark Prods. Corp.*, 446 F.2d 420, 423, 428 (6th Cir. 1971) ("[T]he demonstration by opposing counsel more properly should have been made as part of the cross-examination of Dr. Youngdahl, or at least it could have been supported by sworn testimony of witnesses . . . .  The unsworn, self-serving statements of counsel

are not evidence."); Kita needed to provide, but did not provide this court, with an affidavit or other

sworn declaration to support this assertion. *See, e.g., Billheimer v. Rose*, 2003 WL 22327952, *4

n.4 (S.D. Ohio Aug. 20, 2003) ("Plaintiffs have argued that these Defendants have failed to

demonstrate that they are entitled to dismissal, because their motion is supported by statements of

counsel which are not evidence.  Although the Court agrees with Plaintiffs that the statements of

counsel are not evidence, the Plaintiffs' argument misses the point, since this motion has been

supported by Bottome's declaration.") (record citation omitted).

**Kita concludes the body of the objection document by stating**, "The Rogers case required

a rational legal analysis if credibility is denied.  This was not done."  P's Objections at 3 (second

unnumbered paragraph following ¶ 11).  The court assumes that by the "denial" of credibility, Kita

means an adverse credibility determination.  In any event, this assertion is conclusory.  Kita does

not support it with any developed argumentation or discussion of past decisions – binding or

persuasive – which had arguably similar facts or evinced an arguably similar error by the ALJ

regarding a credibility determination.  He does not even provide the full name and citation for "[t]he

Rogers case" – perhaps *Rogers v. SSA*, 486 F.3d 234 (6ᵗʰ Cir. 2007), discussed in Kita's brief before

the Magistrate Judge at 31-32 – and it is not for the court to look through the R&R or the earlier

briefs to see which decision he intended to cite or why he might believe it supports his argument.

**In short,** Kita's objection is arguably too general and conclusory to constitute a proper

objection.  *Cf., e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008)

(Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or

regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's

legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as

14

no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24,

1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.)).

But even if this court reviews the objected-to portion of the R&R *de novo*, Kita's non-waived

arguments have not identified any defect in the Magistrate's reasoning.


## ORDER

Accordingly, having reviewed the complaint, the parties' briefs, the R&R, the plaintiff's

objections to the R&R, and the defendant's response to those objections:

The plaintiff's objections [document # 15] are **OVERRULED**.

The R&R [document # 14] is **ADOPTED**.

The Commissioner's denial of disability benefits is **AFFIRMED**.

The complaint is **DISMISSED.**

This case is **TERMINATED** and **CLOSED**.

A separate judgment will issue.

**This is a final order, but it may not be appealable.**   *See Smith v. Konteh*, 2009 WL

799095, *3 with n.3 (W.D. Mich. Mar. 23, 2009) ("This is a final order . . . .  However, by failing

to file *specific, supported* objections, Smith waived his right to appeal to the Sixth Circuit.").[9]

---

[9]

*See generally Southall v. City of Grand Rapids*, 2008 WL 3739163, *3 (W.D. Mich. Oct. 29, 2008) (Maloney, C.J.) ("[F]ailure to object to the recommendations of a magistrate judge constitutes a waiver of the right to appeal.") (citing *Harris v. Detroit Pub. Schs.*, 245 F. App'x 437, 442 n.6 (6th Cir. 2007) (citing *US v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981))).  *See also:*

*Sarampote v. White*, 2009 WL 125036, *8 (W.D. Mich. Jan. 16, 2009) (Quist, J.);
*Isaacson v. Cliffs River Marina*, 2009 WL 103959, *2 (W.D. Mich. Jan. 13, 2009) (Bell, J.);
*Robinson v. Bergh*, 2009 WL 33479, *4 (W.D. Mich. Jan. 5, 2009) (Edgar, J.).

**IT IS SO ORDERED this 18th day of May 2009.**

/s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge